IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**RICHARD ALLEN PENNINGTON,**

    **Plaintiff,**

v.                                                Civil Action No. 2:14-cv-08307

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12), Brief in Support of Defendant's Decision (ECF No. 13) and Plaintiff's Reply to Defendant's Brief in Support of Defendant's Decision (ECF No. 14).

Background

Richard Allen Pennington, Claimant, protectively applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act on November 23, 2010 (ECF No. 130-135).  The claim was denied initially on January 28, 2011 (Tr. at 71-75) and upon reconsideration on March 28, 2011 (TR. at 79-81).  Claimant filed a written request for hearing on May 24, 2011 (TR. at 82- 84).  In his request for a hearing by an Administrative Law Judge (ALJ), Claimant stated that he disagreed with the determination made on his claim because he was totally disabled (Tr. at 82).  Claimant appeared in person and testified at a hearing held in Charleston, West Virginia, on October 23, 2012 (Tr. at 36-61).  In the Decision dated November 20, 2012, the ALJ determined the Claimant was not disabled under section 1614(a)(3)(A) of the

Social Security Act (Tr. at 22-31).  On December 20, 2012, Claimant requested a review by the Appeals Council because the decision was contrary to the medical evidence and regulations (Tr. at 17-18).  On December 13, 2013, the Appeals Council received additional evidence from Claimant which was made part of the record (Tr. at 6).  That evidence consisted of Representative correspondence from Jan D. Dils, Esq., dated December 20, 2012, admitted as Exhibit 17E; Medical evidence from Charleston Area Medical Center, dated September 4, 2013, to February 1, 2013, admitted as Exhibit 15F; Medical evidence from Charleston Area Medical Center, dated February 5, 2013, to February 22, 2013, admitted as Exhibit 16F; and Medical evidence from Charleston Area Medical Center, dated February 18, 2013, admitted as Exhibit 17F.  On December 13, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision." (Tr. at 1).  The Appeals Council stated that it considered the reasons for Claimant's disagreement with the decision, the additional evidence, whether the ALJ's action, findings, or conclusions was contrary to the weight of the evidence of record.  The Appeals Council found that this information did not provide a basis for changing the ALJ's decision (Tr. at 1-2).

On February 7, 2014, Claimant brought the present action requesting this Court to review the decision of the defendant and that upon review, it reverse, remand or modify the decision.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id*. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id*. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id*. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the application date, November 23, 2010[1] (Tr. at

---

[1] During the hearing, Claimant amended the alleged onset date to April 1, 2010.

3

24). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of polysubstance use including alcohol and marijuana and major depressive disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant does have a combination of impairments, including substance abuse disorders that meet or equal the level of severity of listings 12.04, 12.08 and 12.09 in Appendix 1. The ALJ then found that Claimant's substance abuse disorder is a contributing factor material to the determination of disability because Claimant would not be disabled if he stopped the substance use. Because the substance abuse disorder is a contributing factor material to the determination of disability, the ALJ held that Claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision (Tr. at 31). On this basis, benefits were denied.

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

### Claimant's Background

Claimant was born in 1954. He was 58 years old on the date of the ALJ's decision. Claimant testified that he stood 5 foot, 8 inches tall and weighed 209 pounds. Claimant earned a GED and took almost a year's worth of college courses while in prison (Tr. at 41-42). Claimant reports to having been incarcerated for 10 years, but on the date of the hearing, he was not on parole or probation (Tr. at 47). Claimant has work experience as a dishwasher and laborer.

### The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

In March of 2007, Claimant underwent blood work and drug tests at Camden Clark Memorial Hospital (Tr. at 252-267). A record dated April 10, 2007, reflects a diagnosis of bipolar disorder versus substance induced mood disorder and alcohol dependence (Tr. at 268). He was also noted to have antisocial personality traits. (*Id*). He reported having auditory hallucinations and seeing demons (Tr. at 268-269). On April 12, 2007, Claimant underwent an assessment/intake at Prestera Center East where he was diagnosed with bipolar disorder, mixed, severe, and alcohol dependence (Tr. at 275).

A Psychiatric Review Technique form (PRTF) completed by a state agency psychologist, John Todd, Ph.D., on July 26, 2007, noted that Claimant suffered from affective disorders, personality disorders and substance abuse disorders (Tr. at 288). Dr. Todd further stated that Claimant had had one or two episodes of decompensation and a mild degree of limitation in maintaining concentration, persistence and pace, while finding him most credible and that his

mental impairments were non-severe (Tr. at 298). Dr. Todd noted that "[c]ontinued abuse of ETOH [ethanol] definitely affects mood and if SA [substance abuse] discontinued would improve mood" (Tr. at 300).

On January 5, 2011, Sally Sowell, M.A., a licensed psychologist, performed a consultative psychological examination (Tr. at 306-308). Claimant acknowledged a history of alcohol dependence and marijuana use, but stated that he had been drug free for 11 years and alcohol free for two years (Tr. at 306). He reported past work as a dishwasher and general laborer and stated that he never held a job for more than a few months (Tr. at 307). Regarding his daily activities, Claimant walked occasionally, independently performed household chores, cooked and maintained his personal hygiene (Tr. at 28, 307). He also watched movies, spoke with his sister over the telephone and talked to one of his neighbors (Tr. at 28, 307). His ex-girlfriend drove him to the consultative psychological examination (Tr. at 307). Ms. Sowell diagnosed him with mood disorder, NOS, alcohol dependence in sustained full remission and antisocial personality traits (Tr. at 308).

On January 17, 2011, Rosemary L. Smith, Psy.D., completed a PRTF, in which she found Claimant to have mild restriction of activities of daily living, mild difficulties in maintaining social functioning, concentration, persistence or pace, and no episodes of decompensation (Tr. at 311-324). Dr. Smith did not find Claimant credible as to his statements about drug use and found no evidence of significant functional limitations (Tr. at 323). Karl G. Hursey, a state agency psychologist, affirmed Dr. Smith's findings on March 25, 2011 (Tr. at 325).

On April 12, 2011, Claimant was admitted to the Emergency Room at Thomas Memorial Hospital (Tr. at 327, 339), for depression and suicidal thoughts after six days of alcohol consumption (Tr. at 327, 333). He had racing, disorganized thoughts and appeared hopeless and

helpless (Tr. at 328, 330, 333). Claimant reported daily consumption of beer and a fifth of alcohol (Tr. at 335). He also tested positive for opiates and marijuana (Tr. at 328, 330). The next day, April 13, 2011, Claimant was admitted to River Park Hospital as an "overflow" patient, where he was diagnosed with major depressive disorder, alcohol dependence, alcohol hallucinations and antisocial personality traits (Tr. at 346).

Claimant was admitted to Charleston Area Medical Center (CAMC) on September 5, 2012, after he was found, unresponsive, in his bed surrounded by alcohol containers (Tr. at 350). He was intubated and placed in the intensive care unit (ICU) (Tr. at 351-352). He was assessed as having respiratory failure secondary to polysubstance use (Tr. at 355). On September 7, 2012, Claimant was evaluated at Prestera Center East and was diagnosed with major depressive disorder and alcohol dependence (Tr. at 387).

On January 21, 2013, Claimant was seen at CAMC complaining of chest pain (Tr. at 472). He reported that he had stopped drinking. (*Id.*). His chest pain was determined to be non-cardiac in nature. He was also noted to have COPD (Tr. at 474). On February 6, 2013, Claimant was seen at CAMC, where he was assessed with GERD and mood disorder (Tr. at 487). Later on February 18, 2013, he was back at CAMC complaining of chest pain. He was given Naprosyn and discharged (Tr. at 489).

Standard of Review

The role of this Court, on judicial review, is to determine whether the Commissioner's final decision is supported by substantial evidence. 42 § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In applying the substantial evidence standard, the Court should not "reweigh conflicting evidence, making credibility determinations, or

substitute [its] judgment for that of the [Commissioner]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F. 3d 585, 589 (4th Cir. 1996)). "When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Id.*

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's finding that Claimant's substance abuse disorder was a material factor contributing to the determination of disability was not supported by substantial evidence (ECF No. 12). Claimant asserts that the ALJ erred in finding, at step two of the sequential evaluation, that if Claimant stopped substance use, his remaining limitations would not constitute a severe impairment.

Defendant asserts that the ALJ reasonably determined that Claimant's polysubstance use was a contributing factor material to a determination of disability. Additionally, Defendant asserts that the ALJ reasonably determined that if Claimant stopped his polysubstance use, his remaining impairments would not satisfy the Commissioner's regulatory definition of severe (ECF No. 13).

### Discussion

Claimant asserts that substantial evidence demonstrates that Claimant's major depressive disorder and bipolar disorder have remained disabling even during periods when he was not using drugs or alcohol, to the extent that the depressive disorder and bipolar disorder, in and of themselves, constituted severe impairments which seriously impacted Claimant's ability to engage in regular and continuing employment (ECF No. 12). Claimant argues that "the ALJ failed to properly consider the medical evidence that showed [Claimant] still had serious mental impairments even during periods of sobriety." (*Id.*) In response to this assertion, Defendant

avers that "Plaintiff never cites the evidence, and instead relies on this statement in his brief. This is an insufficient basis for remand. *See Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ('Statements by counsel in briefs are not evidence')" (ECF No. 13).

<u>Evaluating Mental Impairments</u>

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2014); 20 C.F.R. § 404.1520a (a) (2014). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2014). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2014). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2014). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2014). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2014). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2014). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity

to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2014). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2014). The ALJ incorporates the findings derived from the analysis in his decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2014).

The ALJ held that Claimant's impairments, considered in combination, meet or medically equal Listings 12.04 (Affective Disorders), 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorder) (Tr. at 25). *See*, 20 C.F.R. 404 Subpart P, Appendix 1. To demonstrate a mental impairment under the Listings, Claimant's mental impairments must result in at least two of the following:

- Marked difficulties in maintaining social functioning;
- Marked restriction in activities of daily living;
- Marked difficulties in maintaining concentration, persistence or pace; or
- Repeated episodes of decompensation, each of extended duration.

A marked limitation means more than moderate but less than extreme.

Dr. John Todd, in July 2007, evaluated Claimant under listings 12.04, 12.08 and 12.09 and found no limitations in daily activities and social functioning. Dr. Todd identified mild difficulties in concentration, persistence and pace with one or two episodes of decomposition. Dr. Todd noted that "Continued abuse of ETOH [ethanol] definitely affects mood and if [substance use] discontinued would improve mood." The ALJ gave significant weight to Dr. Todd's opinion concerning continued substance use (Tr. at 26). The ALJ noted that "the record

showed that during periods of excessive alcohol consumption and substance use, the claimant would decompensate." (*Id.*) The ALJ's decision held that "Based on the most recent hospitalization, the [ALJ] noted the claimant's excessive substance abuse caused marked limitations in daily activities, social functioning and concentration, persistence and pace." (*Id.*)

In considering a claimant's symptoms, the ALJ must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever a statement about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.

In the present case, the ALJ discussed Claimant's asserted impairments and the record as a whole. The ALJ found that Claimant alleged an inability to work due to bipolar disorder and depression (Tr. at 27). Claimant stated that his last day of employment was in November 2007 when the job "was done." The ALJ held that if Claimant stopped substance use, "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments." (*Id.*)

The ALJ found that Claimant's injury resulting in a third degree burn, occurred in March 2011, months after the onset date[2] (Tr. at 27, 347). Claimant testified that pain from the burn exists most of the time. Claimant also alleged arthritic pain in his back that radiates to his hips and legs. He described this pain as constant with no relief. The ALJ reported his observations of Claimant during the hearing. The ALJ stated that "The claimant appeared comfortable in a seated position during the hearing." (*Id.*) The ALJ held that "The objective findings do not support the extreme limitations alleged by the claimant and reveal that he is not fully credible."

The ALJ discussed treatment notes in the record (Tr. at 28-29). The ALJ pointed out inconsistencies in Claimant's complaints of pain and substance use. When Ms. Sowell performed a psychological evaluation on January 5, 2011, Claimant indicated that he had sought mental health treatment in 2007 and 2008, when hospitalized at River Park Hospital (Tr. at 306-310). Claimant acknowledged a history of alcohol and marijuana use, but reported being alcohol free for two years and drug free for eleven years.

Contrary to Claimant's assertion that he was drug free for eleven years, treatment notes dated April 2007 documented marijuana use (Tr. at 269). In April 2011, River Bank Hospital's Discharge Summary reported that Claimant self-reported to hearing voices, which started approximately a week prior. Claimant stated that the voices may or may not be related to his increased use of alcohol.

As to Claimant's allegations of pain, the ALJ noted that although Claimant asserts to sustaining third degree burns while working on a gasoline-powered lawn mower, the record

---

[2] Claimant reported to Prestera that the alleged third degree burns on his back occurred on March 30, 2011 (Tr. at 384).

contains no emergency room notes showing he sought treatment for third degree burns (Tr. at 28). Upon admission to River Park Hospital in April 2011, Claimant asserted that he takes Lortab for pain for the burn on his back. Upon physical examination, the hospital's report did not mention rashes, but did refer to "healing burns with pink areas of scar tissues around dry thick crusting to the thoracic and lumbar back" (Tr. at 348). Additionally, during the initial assessment at Prestera, Claimant alleged increased alcohol consumption to help him deal with pain from the burns (Tr. at 380). The ALJ pointed out that in reviewing emergency room notes and River Park Hospital notes, Claimant reported drinking due to facing homelessness, having little social support and financial concerns.

On September 7, 2012, Claimant was examined at the Crisis Center for Prestera. Claimant reported depression due to his parents dying. Claimant also indicated that he has no income and was filing for disability (Tr. at 409). The ALJ noted that the record does not contain diagnostic testing to confirm Claimant's allegation of arthritic pain (Tr. at 29). The ALJ also noted that Claimant's musculoskeletal examinations were essentially normal. Though Claimant testified to severe ongoing back pain related to third degree burns, the ALJ noted Claimant never sought treatment for the alleged burn.

The ALJ held that conservative physical treatment has shown to be effective (Tr. at 29). Likewise, the ALJ held that the effectiveness of Claimant's mental treatment seemed successful although Claimant's testimony suggested failure. Substantial evidence supports the ALJ's findings.

<u>Drug Addiction and Alcoholism</u>

The ALJ held that "if the claimant stopped the substance use, the remaining limitations would not significantly limit his ability to perform basic work activities" (Tr. at 26). The ALJ

stated "during periods of sobriety, the claimant's mental status returned to normal" (Tr. at 30). In determining the extent to which any mental limitations would remain if the substance use stopped, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.

Claimant asserts that the ALJ failed to properly consider the medical evidence that showed he still had serious mental impairments even during periods of sobriety. Claimant asserts the ALJ did not consider records when "[Claimant] was hospitalized at Highland Hospital May 23, 2004, to June 1, 2004, and presumably was substance free for much of that period" (Tr. at 250-251). Claimant additionally asserts that the ALJ failed to consider hospital records prior to his amended alleged onset date (ECF No. 12).

Prior to Claimant's amended alleged onset date, CAMC attending physician, Faraz Quroshi, M.D., noted that "it is hard to distinguish between substance induced mood disorder versus bipolar disorder" because of Claimant's history of alcohol and marijuana use and inability to specify if he had a period of sobriety (Tr. at 269). When Claimant was discharged from CAMC, he underwent an intake assessment at Prestera Center East where he was diagnosed with bipolar disorder, mixed, severe and alcohol dependence (Tr. at 287). Although Claimant asserts to being "presumably" substance free most of the time during his nine day admission in Highland Hospital from May 23, 2004, to June 1, 2004, the CAMC records state that his "[d]rug screen was positive for THC" (Tr. at 250).

Claimant asserts that the ALJ did not consider any of the hospitalizations which occurred between May 2004 and April 2007 or the 2007 progress notes from Prestera Center. Claimant asserts that taking these records into consideration demonstrates "a picture of a long-standing

illness that has persisted even during periods of sobriety while hospitalized" (ECF No. 12). In sum, Claimant asserts that "Had the ALJ fairly considered all of the medical evidence of record, his conclusion regarding materiality, his conclusion would have been different." (*Id.*)

The ALJ's decision clearly states "After careful consideration of the entire record, the undersigned makes the following findings" (Tr. at 24). In finding at step two of the sequential analysis that Claimant has the severe combination of impairments of polysubstance use including alcohol and marijuana and major depressive disorder, the ALJ stated that these impairments were established by the medical evidence. (*Id.*) Not only did the ALJ note a psychiatric review technique form completed in July 2007, but he also gave the opinion of the reviewing psychologist, Dr. Todd, significant weight (Tr. at 26).

The medical evidence that Claimant asserts was not considered by the ALJ, includes the following:

- June 1, 2004

    Discharge Summary from Highland Hospital diagnosing Claimant with depressive disorder, not otherwise specified, polysubstance dependence and alcohol dependence. His psychosocial stressors were reported as "homelessness and problems related to his substance abuse" (Tr. at 250).

- March 29, 2007

    The Admissions Form from Charleston Area Medical Center (CAMC) listed Claimant's diagnoses as bipolar disorder versus substance induced mood disorder and alcohol dependence, and antisocial personality traits (Tr. at 268). Claimant reported to planning to commit suicide with a machete. It was reported that Claimant "had a very long history of alcohol use" (Tr. at 269). Claimant stated "I drink as much as I can

afford." (*Id.*) He also reported to smoking cigarettes and marijuana. The Admissions Form stated that "[it] is questionable whether this patient did have a true period of sobriety as there [are] discrepancies in the history that he had provided… It is hard to distinguish between substance induced mood disorder versus bipolar disorder secondary to this" (Tr. at 269). Claimant's urinary drug screen was positive for THC. (*Id.*)

- March 30, 2007

Medical Records from CAMC reflect that upon examination, Claimant was diagnosed with major depressive disorder, rule out bipolar disorder, NOS, history of alcohol dependence and polysubstance use (Tr. at 273).

Contrary to Claimant's assertion, the medical records referenced above do not reflect that he still had a mental impairment during times of sobriety because there were no periods of time of sobriety.

Under the Social Security Act, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The 1996 Contract with America Advancement Act amendment and the social security regulations set up a two-step analysis for determining this issue. The ALJ first must determine whether the claimant is disabled. *See* 20 C.F.R. § 416.935(a) (2014). If the ALJ does conclude that the claimant is disabled, he must then ask whether drug addiction or alcoholism is a contributing factor to claimant's disability. (*Id.*) Drug addiction is a contributing factor if the claimant would not be disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. § 416.935(b)(1) (2014).[3]

---

[3] Claimant argues that the ALJ failed to consider SSR 13-2p (ECF No. 12). Claimant cites the Ruling's interpretation stating that "[i]f the evidence in the case record does not demonstrate the separate effects of the treatment for DAA [Drug Addiction and Alcoholism] and for the co-occurring mental disorder(s), SSA will find that DAA is not material." The Ruling did not become effective March 22, 2013, four months after the ALJ's decision

16

The ALJ found Claimant would have mild functional limitations in activities of daily living, social functioning and concentration, persistence or pace if substance use was stopped (Tr. at 30). Claimant reported that he managed his personal hygiene independently, prepared meals, managed household chores and mowed the lawn (Tr. at 186-193). Claimant reported shopping once a week for an hour, talking with others, visiting and attending church. Claimant indicated that he did not need reminders to take medication and that he spent time reading and watching television. The ALJ found that in the fourth functional area, Claimant would experience no episodes of decompensation if the substance use was stopped. (*Id.*) The ALJ held that the remaining mental limitations would cause no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, they would be nonsevere if the substance use was stopped (Tr. at 31). Therefore, the ALJ did not commit error at step two of the sequential evaluation because if Claimant stopped his substance use, his remaining limitations would not constitute a severe impairment.

Vocational Expert

At the hearing, the ALJ instructed the vocational expert (VE) to consider an individual 52 years of age with a twelfth grade education earned by a GED. The individual suffers from a mood disorder, not otherwise specified, with a distinct history of antisocial personality traits, including a long history of antisocial behavior (Tr. at 55). The individual does not have a driver's license. He appears to experience some arthritic aches and pains in the lumbar spine which go down the legs. The pain is aggravated by movement and activity. The individual also has a "burn spot" on his back (Tr. at 56). The ALJ stated that the individual "could probably only occasionally do the postural movements of bending, stooping, kneeling, crouching and

---

date of November 20, 2012. Additionally, Claimant failed to demonstrate that the Ruling would have affected the ALJ's decision.

crawling. He could maybe lift up to 20 pounds occasionally." The ALJ then asked the VE if the hypothetical individual with those residuals would be able to perform any work on a sustained basis. (*Id.*)

The VE testified that the hypothetical person would be able to perform the jobs of a mail clerk, price marker and janitorial. The ALJ then asked the VE to consider the same hypothetical individual, however, amending that the person was almost 56 years of age, to be at the same age of Claimant according to his altered onset date. The VE testified that the same jobs would be available (Tr. at 57).

## Conclusion

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes him from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a).

Here, substantial evidence supports the ALJ's holding that if Claimant stopped the substance use, his remaining impairments would not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Substantial evidence supports the determination of the ALJ. The ALJ's decision reflects an adequate consideration of his impairments. The ALJ appropriately weighed the psychological and medical opinions and the evidence of record in its entirety. The ALJ appropriately relied on the evidence as a whole to

determine that Claimant would be able to perform basic work activities if he stopped the substance use (Tr. at 26). Accordingly, the ALJ denied Claimant's application for SSI under the Social Security Act.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12) and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

      The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

      Date:   February 23, 2015.

                                                        Dwane L. Tinsley
                                                        United States Magistrate Judge